FILED
2016 Jan-21  PM 01:32
U.S. DISTRICT COURT
N.D. OF ALABAMA

**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | |
|---|---|
| **MICHAEL HOPSON,** } | |
| } | |
| **Plaintiff,** } | |
| } | |
| **v.** } | **Case No.:  2:15-cv-01020-RDP** |
| } | |
| **WELLS FARGO BANK, N.A.,** } | |
| } | |
| **Defendant.** } | |

**MEMORANDUM OPINION**

I.      **Introduction**

This case is before the court on Defendant Wells Fargo Bank, N.A.'s Motion to Dismiss (Doc. # 17), filed August 11, 2015, and Defendant Alan Hauck's Motion to Dismiss (Doc. # 20), filed August 18, 2015.  The Motions are fully briefed.  (Wells Fargo: Docs. # 17, 18, 29, 33); (Hauck: Docs. # 20, 30, 32).  Plaintiff has also filed an affidavit in opposition.  (Doc. # 28). After careful review, and for the reasons outlined below, the Motions (Docs. # 17, 20) are due to be granted.

II.      **Background Facts and Procedural History**

Plaintiff filed his Complaint on June 17, 2015, alleging violation of rights under the United States Constitution and Alabama state laws.  (Doc. # 1).  The Complaint names as Defendants Wells Fargo, N.A. ("Wells Fargo"), Scottie Allen Carrol, Allen Hauck[1] (the owner of non-defendant H&T Properties), the City of Birmingham, Birmingham Police Chief A.C. Roper

---

[1] Plaintiff incorrectly designated Hauck as "Haulk" in the Complaint.  (Doc. # 1).

in his official capacity, and four Birmingham Police Officers (in their official capacities) — H. Higgins, G. Hallman, B. Smith, and M. Allison (collectively, the "Officers"). (*Id.*).

On June 17, 2013, Plaintiff was at his residence at 1041 Northwood Drive in Birmingham, Alabama. (Doc. # 1). Around 8:00 a.m., Carrol came to Plaintiff's property, allegedly to perform maintenance. (*Id.*). Plaintiff avers that Carrol was at the time acting as an employee or agent under the direction of Hauck (who was doing business as H&T Properties). (*Id.*). Plaintiff further contends that Hauck, in turn, was acting as an agent for Wells Fargo, and Wells Fargo was directing Hauck. (*Id.*). Wells Fargo is the holder of the promissory note and mortgage on Plaintiff's property. (Docs. # 18, 18-1)). Plaintiff does not aver that Hauck or any Wells Fargo employees were actually present at his residence on the date in question.

Plaintiff asserts that the Officers arrived "to investigate" Carrol's presence. (Doc. # 1). When Carrol's keys were unable to open the door to Plaintiff's residence, the Officers purportedly forced entry. (*Id.*). Both the Officers and Carrol entered and allegedly committed theft of a variety of Plaintiff's personal property, including a safe with $30,000.00 cash.[2] (*Id.*).

Plaintiff thereafter filed his Complaint, alleging four causes of action pursuant to 42 U.S.C. §§ 1983, 1985, and 1988: (1) violation of federal constitutional rights under the First, Fourth, and Fourteenth Amendments as to the Officers; (2) negligent hiring, training, supervision, and retention by Chief Roper and the City of Birmingham; (3) burglary in violation of Code of Alabama §§ 13A-7-5 and 13A-7-6 as to the Officers in concert with Carrol and Haulk; and (4) violation of Code of Alabama §§ 13A-8-2 and 13A-8-3 for theft of personal property by Officers in connection with Hauck and Carrol. (Doc. # 1). There are no specific causes of action alleged against Wells Fargo. (*See id.*).

---

[2] Plaintiff alleges that the Officers had no warrant and there was no probable cause. (Doc. # 1).

Wells Fargo and Hauck filed their Motions to Dismiss in response.[3]  (Docs. # 17, 20).

Wells Fargo contends that Plaintiff did not assert any facts or plead any claims against it, there is

no allegation that it employed or trained any of the Co-Defendants, and, in any event, it cannot

be liable for any alleged intentional torts.[4]  (Doc. # 18).  Hauck argues that he is not a state actor

under Section 1983, Defendant Carrol's averred criminal and tortious actions were neither in the

line and scope of any business relationship with Hauck (nor were they in furtherance of Hauck's

business), and Hauck did not participate in, authorize, or ratify any of Carrol's actions.[5]  (Doc. #

20-1).

Plaintiff responded to both Motions with briefs and an affidavit.[6]  (Docs. # 28, 29, 30).  In

his briefs, Plaintiff argues that, as to both Defendants, the facts are sufficiently specific.  (Docs. #

29, 30).  Plaintiff contends that Hauck acted in concert with a state actor and is thus considered a

---

[3] A review of the docket shows that Carrol has not yet filed a responsive pleading.  (*But see* Doc. # 43 (indicating responsive pleading due February 2, 2016)).  The other Defendants timely filed Answers.  (Docs. # 8, 22, 23, 24, 25, 26).

[4] Wells Fargo attached to its Motion a copy of the promissory note and mortgage it holds on Plaintiff's property.  (Doc. # 18-1).

[5] Plaintiff pleads causes of action for theft and burglary under the Alabama Criminal Code.  (Doc. # 1). While Plaintiff has no standing as a private citizen to bring criminal charges, the court need not address that issue in detail here.  *See, e.g., Williams v. Univ. of Ala. Hosp. at Birmingham*, 353 Fed. Appx. 397, 398 (11th Cir. 2009) ("The government, not privative citizens, prosecutes crimes.").  The court treats those claims for purposes of resolving the subject Motions to Dismiss as analogous intentional torts.  *See Johnson v. City of Shelby, Miss.*, 135 S. Ct. 346, 346 (2014) (*per curiam*) ("Federal pleading rules . . . do not countenance dismissal of a complaint for an imperfect statement of the legal theory supporting the claim asserted.").

[6] Wells Fargo requested that the court disregard the affidavit because it is replete with hearsay statements and is beyond the four corners of the Complaint.  (Doc. # 33).  However, even if the court considers the "facts" set forth in the affidavit to be true and part of the Complaint, that would not save Plaintiff's claims from dismissal.

In his affidavit, Plaintiff avers that he spoke with Defendant Smith, who informed Plaintiff that he had a phone conversation with Hauck, who in turn admitted to Smith that Wells Fargo had ordered Hauck (as H&T Properties) to perform maintenance on Plaintiff's residence.  (Doc. # 28).  Also, Plaintiff states that his "real estate agent, Caprina Harris, called Teresa (LNU), a representative of Wells Fargo."  (*Id.*).  Teresa then came to the house and told Plaintiff that her supervisor at Wells Fargo "would oftentimes send someone behind her to check her maintenance of the properties," and "her supervisor must have sent defendant, Carroll [sic] and his crew to check behind her."  (*Id.*).  "On a later occasion, [Plaintiff] spoke again to Teresa, who stated to [him] that 'what happened to you was deadly wrong and someone could lose his job (at Wells Fargo).'"  (*Id.*).

state actor himself for purposes of Section 1983, and that Hauck is liable for the acts of his agent (Carrol) done in the scope of employment.  (Doc. # 30).  As for Wells Fargo, Plaintiff asserts that he pleaded specific enough facts to show that Hauck was Wells Fargo's agent.  (Doc. # 29).

In reply, Defendants repeat there are no plausible allegations (even considering Plaintiff's affidavit) that they are state actors.  (Docs. # 32, 33).  And, both parties assert that Plaintiff cannot succeed on his claim that theft and breaking and entering are in furtherance of their businesses as a mortgagee and maintenance company respectively, and no facts have been alleged that show they ratified Carrol's actions.  (*Id.*).

## III.   Standard of Review

The Federal Rules of Civil Procedure require only that the complaint provide "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  However, the complaint must include enough facts "to raise a right to relief above the speculative level."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  Pleadings that contain nothing more than "a formulaic recitation of the elements of a cause of action" do not meet Rule 8 standards, nor do pleadings suffice that are based merely upon "labels and conclusions" or "naked assertion[s]" without supporting factual allegations.  *Twombly*, 550 U.S. at 555, 557.  In deciding a Rule 12(b)(6) motion to dismiss, courts view the allegations in the complaint in the light most favorable to the non-moving party.  *Watts v. Fla. Intl. Univ.*, 495 F.3d 1289, 1295 (11th Cir. 2007).

To survive a motion to dismiss, a complaint must "state a claim to relief that is plausible on its face."  *Twombly*, 550 U.S. at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Although "[t]he

4

plausibility standard is not akin to a 'probability requirement,'" the complaint must demonstrate "more than a sheer possibility that a defendant has acted unlawfully." *Id*. A plausible claim for relief requires "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence" to support the claim. *Twombly*, 550 U.S. at 556.

In considering a motion to dismiss, a court should "1) eliminate any allegations in the complaint that are merely legal conclusions; and 2) where there are well-pleaded factual allegations, 'assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.'" *Kivisto v. Miller, Canfield, Paddock & Stone, PLC*, 413 Fed. Appx. 136, 138 (11th Cir. 2011) (quoting *Am. Dental Assn. v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010)). That task is context specific and, to survive the motion, the allegations must permit the court based on its "judicial experience and common sense . . . to infer more than the mere possibility of misconduct." *Twombly*, 550 U.S. at 556. Further, "courts may infer from the factual allegations in the complaint 'obvious alternative explanation[s],' which suggest lawful conduct rather than the unlawful conduct the plaintiff would ask the court to infer." *Am. Dental*, 605 F.3d at 1290 (quoting *Iqbal*, 556 U.S. at 682). If the court determines that well-pleaded facts, accepted as true, do not state a claim that is plausible, the claims are due to be dismissed. *Twombly*, 550 U.S. at 556.

## IV.   Analysis

### A.   Plaintiff has not plausibly alleged that Wells Fargo and Hauck are "state actors"

Plaintiff brings this lawsuit pursuant to 42 U.S.C. §§ 1983 and 1985. (Doc. # 1). To state a claim under Section 1983, Plaintiff "must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988)

(citations omitted).  "The traditional definition of acting under color of state law requires that the defendant in a § 1983 action have exercised power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'"  *Id.* (citations omitted).  The Supreme Court has established that "if a defendant's conduct satisfies the state-action requirement of the Fourteenth Amendment, 'that conduct [is] also action under color of state law and will support a suit under §1983.'"  *Id.* (citations omitted) (changes in original).  A deprivation of a plaintiff's rights is fairly attributable to the state where (1) it is "caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the State or by a person for whom the State is responsible," and (2) where the party charged with the deprivation is a person who may "fairly be said to be a state actor."  *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (1999) (internal citations and quotations omitted).

In certain circumstances, a private party may be considered a state actor for purposes of Section 1983.  *Harvey v. Harvey*, 949 F.2d 1127, 1130 (11th Cir. 1992); *see also Lugar v. Edmonson Oil Co., Inc.*, 457 U.S. 922, 938-39 (1982).  The Eleventh Circuit directs district courts to determine whether one of three conditions is met for private parties such as Wells Fargo and Hauck to be deemed state actors:

> (1) the State has coerced or at least significantly encouraged the action alleged to violate the Constitution ("State compulsion test"); (2) the private parties performed a public function that was traditionally the exclusive prerogative of the State ("public function test"); or (3) "the State had so far insinuated itself into a position of interdependence with the [private parties] that it was a joint participant in the enterprise[]" ("nexus/joint action test").

*Rayburn ex rel. Rayburn v. Hogue*, 241 F.3d 1341, 1347 (11th Cir. 2001) (quoting *NBC, Inc. v. Commns. Workers of Am.*, 860 F.2d 1022, 1026-27 (11th Cir. 1988)).

Plaintiff has not plausibly alleged that any of the three tests apply to Wells Fargo or Hauck.  Moreover, the Complaint does not set forth facts that the public function test or

nexus/joint action test is applicable to any Defendant in this case. Specifically concerning Wells Fargo and Hauck, Plaintiff does not plausibly plead facts demonstrating the application of the State compulsion test. And, the Complaint does not set forth allegations that Wells Fargo or Hauck are liable for a violation of Plaintiff's constitutional rights. (*See* Doc. # 1).

Further, Plaintiff would need to demonstrate Wells Fargo's and Hauck's connections with state actors (that is, the Officers and, perhaps, Carrol) who were present at Plaintiff's residence. Plaintiff has not come close to making this showing.

In fact, the Complaint altogether fails to state for which counts Wells Fargo is liable. (*See* Doc. # 1). It is possible that Plaintiff intended to assert claims that Wells Fargo is liable for the actions allegedly committed by Carrol and imputed on Hauck since Plaintiff argues that Carrol was Hauck's agent and Hauck was Wells Fargo's agent.[7] (*Id.*; Doc. # 28). Regardless, the only factual allegations about Wells Fargo Plaintiff has made in the Complaint (besides the party description) are: "At the time, Defendant, Haulk [sic], acted as an agent for Defendant, Wells Fargo," and "Wells Fargo, directed the activity of Carrol." (Doc. # 1 at ¶¶ 19, 20). These statements are conclusory and the court disregards them. *See Twombly*, 550 U.S. at 555; *Am. Dental Assn.*, 605 F.3d at 1290. Nowhere in the Complaint does Plaintiff set forth any plausible facts suggesting that Hauck is Wells Fargo's agent or how Wells Fargo "directed" him. (Doc. # 1).

While the Complaint states which counts specifically apply to Hauck, it does not plausibly allege any facts demonstrating Hauck's liability. (Doc. # 1). Again, apart from the party description, Plaintiff makes only these claims regarding Hauck (who is misnamed as "Haulk"):

---

[7] Also, the inclusion of a Section 1985 reference suggests that Plaintiff may have believed that Wells Fargo conspired to deprive Plaintiff of his civil rights. *See* 42 U.S.C. § 1985. But, significantly Plaintiff has not pled any conspiracy claim (much less a civil rights conspiracy) as to Wells Fargo (or Hauck). (*See* Doc. # 1).

17. At the time, Defendant, Carrol, acted as an employee or agent for Defendant, Haulk, who was doing business as H & T Properties.

18. Defendant, Haulk, directed the activity of Carrol.

19. At the time, Defendant, Haulk, acted as an agent for Defendant, Wells Fargo.

20. Defendant, Wells Fargo, directed the activity of Haulk.

. . . .

45. On said date, Defendants, [the Officers], acted in concert with Defendants, Carrol and Haulk, to commit burglary . . . .

45.[8] On said date, Defendants, [the Officers], acted in concert with Defendants, Carrol and Haulk, to commit theft . . . .

(Doc. # 1). Those statements are due to be disregarded as conclusory. *See Twombly*, 550 U.S. at 555; *Am. Dental Assn.*, 605 F.3d at 1290. (Of course, to the extent that they do state plausible facts (*i.e.*, Carrol acted in concert with certain the Officers, and Carrol was an employee of Hauck), the court accepts them. However, those facts alone do not save Plaintiff's claims against Hauck.).

Because Plaintiff has not plausibly alleged facts regarding Wells Fargo and Hauck in connection with Carrol, Plaintiff cannot show that they acted in concert with the state actor Co-Defendants (that is, the Officers). Without stating a plausible claim against Wells Fargo and Hauck, Plaintiff cannot demonstrate the existence of the State compulsion test as to them (or for that matter the other two state actor tests), and it follows that Section 1983 is not applicable here. Accordingly, the Section 1983 claims against Wells Fargo and Hauck are due to be dismissed.

---

[8] After paragraph fifty (50) of the Complaint, the paragraphs are again numbered forty-five (45) through forty-eight (48). (Doc. # 1).

**B.**      **Plaintiff has not shown he is entitled to relief from Wells Fargo or Hauck based upon the pendant state claims**

Plaintiff also alleges that Carrol and the Officers, acting in concert, broke into Plaintiff's house and took his property (that is, committed intentional torts).[9]  (Doc. # 1).  The basis of the Complaint against Hauck is that Carrol was Hauck's employee or agent.  (*Id.*).  And, in turn, it is alleged that Hauck was Wells Fargo's agent.  (*Id.*).  But, as explained above, Plaintiff has merely made conclusory averments in an attempt to connect Wells Fargo with Hauck, and Hauck with Carrol.  (*See id.*).  The court disregards conclusory allegations.  *See Twombly*, 550 U.S. at 555.

Moreover, even if Plaintiff adequately pleaded that Wells Fargo requested Hauck to perform maintenance on the property, and even if Hauck employed Carrol to perform that maintenance, the Complaint does not establish that Plaintiff is entitled to relief from Wells Fargo or Hauck.   Under Alabama law, in order for a principal or employer to be liable for the intentional torts of an agent or employee, the agent or employee "must demonstrate that (1) the tortious acts were committed 'in the line and scope of the employment,' (2) they were committed 'in furtherance of the business of the employer,' or (3) the employer participated in, authorized, or ratified the wrongful acts.'"   *Edwards v. Hyundai Motor Mfg. Ala., LLC*, 603 F. Supp. 2d 1336, 1357-58 (M.D. Ala. 2009) (quoting *Potts v. BE & K Constr. Co.*, 604 So.2d 398, 400 (Ala. 1992)) (other citation omitted); *Ex parte Atmore Cmty. Hosp.*, 719 So.2d 1190, 1194 (Ala. 1998). However, "[w]here the servant's intentionally tortious or criminal acts are not performed in furtherance of the master's business, the master will not be held liable as a matter of law *even though the employment situation provided the opportunity for the servant's wrongful acts or the means for carrying them out*."  *East Ala. Behavioral Med., P.C. v. Chancey*, 883 So.2d 162, 168 (Ala. 2003) (citations omitted) (emphasis in original); *see also Prosser v. Glass*, 481 So.2d 365,

---

[9] Plaintiff characterizes this alleged conduct as burglary and theft.

368 (Ala. 1985) ("Where the servant abandons his or her master's business, but the deviation is slight and not unusual, the court may, as a matter of law, determine that the servant was still executing the master's business. However, where the deviation is very marked and unusual, the court may determine that the servant was outside the scope of employment."); *cf. Atmore Cmty. Hosp.*, 719 So.2d at 1194 (in the context of sexual harassment, "where a co-employee defendant's behavior is aimed at satisfying the co-employee's own lustful desires, this Court has held that no corporate purpose could conceivably by served" (internal changes and quotations removed)).

According to Plaintiff's allegations, Carrol went to Plaintiff's house to do maintenance work at the behest of Hauck because Hauck's business is to perform maintenance. (*See* Docs. # 1, 32). Hauck's business is not to commit illegal acts of burglary and theft. Thus, Carrol did not commit the purported intentional torts "in the line and scope of the employment" in Hauck's business. *Edwards*, 603 F. Supp. 2d at 1357. Similarly, Plaintiff pleads no facts that suggest Carrol's allegedly tortious conduct was committed in the furtherance of Hauck's business, "even though the employment situation provided the opportunity for [Carrol]'s wrongful acts or the means for carrying them out." *Chancey*, 883 So.2d at 168. And, no facts suggest that Hauck "participated in" the tortious conduct. *Edwards*, 603 F. Supp. 2d at 1357.

Nevertheless, Hauck may still be liable for Carrol's intentional torts if Hauck authorized or ratified that conduct. *See Atmore Cmty. Hosp.*, 719 So.2d at 1195. A principal or employer "ratifies conduct if: (1) the employer has actual knowledge of the tortious conduct; (2) based on this knowledge, the employer knew the conduct constituted a tort; and (3) the employer failed to take adequate steps to remedy the situation." *Id.* (quoting *Potts*, 604 So.2d at 400). But, again, Plaintiff makes little more than conclusory allegations against Hauck, and none of the acceptable

averments demonstrate that Hauck had any knowledge of Carrol's purportedly tortious conduct. (*See* Doc. # 1).  Without a showing of Hauck having actual knowledge, Plaintiff cannot prove that Hauck ratified any of Carrol's intentional torts.  Therefore, Plaintiff has not shown entitlement to relief from Hauck for intentional torts under Alabama state law.

If Hauck cannot be held liable for any of Carrol's alleged tortious conduct, then neither can Wells Fargo.  Plaintiff avers that Hauck is Wells Fargo's agent, but if the purported agent is not liable for intentional torts, then the principal cannot be held liable for that agent's purported torts.  *See Burden v. Intl. Longshoremen's Assn., Local No. 1410*, 510 F. Supp. 2d 618, 626 (S.D. Ala. 2007) (quoting *Stevenson v. Precision Standard, Inc.*, 762 So.2d 820, 827 (Ala. 1999) ("[O]n a claim against an agent, and against the principal solely on the theory of respondeat superior, a verdict in favor of the agent works an automatic acquittal of the principal . . . .").  Because Hauck cannot be liable for Carrol's intentional torts, it follows that neither can Wells Fargo.

In any event, Plaintiff has not plausibly alleged that Wells Fargo ratified the purported intentional torts.  (*See* Doc. # 1).  Nor has Plaintiff plead plausible facts showing that the averred acts of Hauck's agent furthered Wells Fargo's business and role as the mortgagee of Plaintiff's residence.  (*See id.*).  For all these reasons, the pendant state law claims made by Plaintiff are also due to be dismissed as to both Hauck and Wells Fargo.

## V.    Conclusion

For these reasons, Wells Fargo's and Hauck's Motions to Dismiss (Docs. # 17, 20) are due to be granted and those Defendants are due to be dismissed from this case.  A separate order of dismissal will be entered.

**DONE** and **ORDERED** this January 21, 2016.

**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE